May it please the Court and thank you for hearing from us this morning. This is a matter in which we are plumbing the limits of bankruptcy jurisdiction over post-confirmation claims. The matter's been fully braved, and I know the Court has read all of the papers and everything that's been filed by all the parties in the matter, so I'll try not to belabor the point. And, of course, if the Court has questions, I'd be happy to respond to them. I think the distinction that separates this matter from many others in the reported cases is a factual one, and, of course, all cases turn on their facts. In this particular instance, though, the facts clearly, at least certainly, according to the appellant's reading of the law, favor a finding that the bankruptcy court, the lab jurisdiction, to approve the state court settlement. And the reason that I say so is because every single claim that was involved in the matter that was being settled arose post-confirmation. There's no question, there's really no argument about the fact that any post-pardon me, pre-confirmation claims, any conduct pre-confirmation which Mr. Uppel or MTPA Ventures wanted to sue over had been eliminated. Sotomayor, is it your position that any post-confirmation conduct is off-limits to the bankruptcy court, or is your position narrower than that? It's narrower than that. I think that's the point. How would you define it precisely? What is the rule you're asking us to adopt? I'm really not asking the Court to adopt a new rule. It's the same rule that the Court has already adopted. It's the PACOR close nexus test. And there has to be a close nexus under the PACOR test, which this Court adopted and has implemented in two recent cases, in the In re Pegasus Gold and the In re Valdez Development Fisheries Association cases, that there has to be a close nexus. And that close nexus is very difficult to establish when we're talking about post-confirmation type of conduct. Wasn't one of the claims, though, that the UPL parties wanted to ask the bankruptcy court to vacate the confirmation of the plan because of alleged fraud? Wasn't that one of the settled claims? Judge Graber, yes. And, in fact, but what was settled was everything under the sun. Well, I understand that. But if there are items that have a close nexus, then that seems to contradict your argument. That's why I asked you that question, because that would appear to me, at a minimum, to be a claim that has a close nexus to the bankruptcy and to the confirmation of the plan. To say it should be, I'm claiming it should be undone because of fraud. That claim was never presented, Judge Graber. Never. Wasn't it settled as part of the settlement? That was one of the settlement. We know that UPLs did not come into bankruptcy court and try to get the plan vacated. And had they done that, you agree bankruptcy court under the clause where it retained jurisdiction would have the jurisdiction to decide that question. I suppose that the real question is the only way that motion would have been made to try to vacate the confirmation order would have been in the context of a contempt motion brought by 350 Encinitas, which was apparently being discussed. Neither that contempt motion nor the supposed claim to set aside the confirmation order was ever presented to any federal court ever. It was settled, right? As a result of the settlement, UPLs cannot bring that claim to bankruptcy court. Everything was settled. Every single claim that one could imagine under the sun with a waiver of California Civil Code Section 1542. But I don't believe that the law is that people can create theoretical claims and talk about what might have happened if anyone had sued. You don't actually have to file a lawsuit to settle it before you get into court, do you? No. Claims can be settled at any stage, of course. At any stage whatsoever. But to me so it's. So the fact that there are bankruptcy-related claims that are settled and non-bankruptcy claims that are settled, perhaps that's why the settlement agreement requires the blessing of both courts, the State court and the bankruptcy court. But I don't understand why the bankruptcy court doesn't have jurisdiction over the settlement of the bankruptcy-related claims. And at least in the district court, you don't raise that argument here. But you were raising an argument that the person who settled didn't have the authority to settle under what the bankruptcy court itself had done, which is an interpretation of the plan. Judge Graber, you're 100 percent correct. And that argument that was made back in the district court really missed the mark. Well, it may have. But whether the argument was correct or incorrect, it was the argument that you made. And it precisely had to do with the extent of the plan and the meaning of the plan. Judge Graber, you're 100 percent correct. But that begs the question of whether there was jurisdiction in the first instance. This Court's opinion in the In re Feats case says jurisdiction was determined from the outset, at the beginning of the proceeding. Basically, if the rule was as you're suggesting, then what you're really saying is that affirmative defenses in a case in which no Federal jurisdiction existed that by raising a certain affirmative defense, one could engage Federal jurisdiction where it was absent in the first instance. And that's not the law as I understand it. So although we did come in and claim Mr. Estrin had no authority to sign off on this settlement agreement in the district court, that was not sufficient to establish Federal jurisdiction, because the question is determined at the outset. And to me, the question that needs to be answered is whether in a closed bankruptcy case the mere service of a notice of intended action without invoking the Court's jurisdiction in any respect whatsoever, asking for any ruling by the Court, is sufficient to establish Federal jurisdiction. It seems to me that what you're really complaining of is a procedural defect, but not a jurisdictional defect. That is, that there should have been a different piece of paper filed first, instead of or in addition to the notice of intended action. But that's not really a jurisdictional problem. That's a procedural glitch, and those are different. I agree with you, Judge Graber. And I'm not saying that this is a mere technicality. I don't think it's a technicality that there was no open bankruptcy case at the time. I don't believe that it is a step that this Court ought to permit, that people can come into closed cases and litigate them as if they were never closed. There was a process in place that was never ---- But closed is not dismissed, right? Correct. Correct. Still, the rules do provide for a process to reopen a case which has been closed. That process wouldn't exist unless it was a necessary step to be taken. Well, but that's not the argument you've made. I mean, what you're claiming is not the Court should have waited for the right piece of paper to reopen. You're claiming that the Court lacked subject matter jurisdiction, and those really are two separate arguments. And I guess I'm not sure that you haven't waived the argument that, gee, they should have just filed one more piece of paper. Judge, that's not the principal argument that we're making here. The principal argument we're making is that you can't take a State court lawsuit, pull it up to Federal court by the notice of removal, litigate the matter, file Rule itself before confirmation, any conduct before confirmation, have the bankruptcy judge then say, I'm declining expressly, by the way, in the order, as bare as that order is, without findings of fact and conclusions of law, the order says that the bankruptcy court is declining to exercise jurisdiction, further jurisdiction over that State court case, go back to State court. That's where the parties win, back to State court. And the bankruptcy judge, Judge Adler, also said, in her opinion at the time, these issues of State law are best determined in California Superior Court from where you came. So I'm not going to entertain your action any further. Go back to State court and litigate those matters, which is where the parties win. The problem that we have with this, the way this matter was handled is that after that was done, and after the parties went back to State court, and after they were told that State court, State law is going to control disposition of these claims and the only things left, by the way, are State court claims based upon supposed breach of an oral contract or fraud, all arising post-confirmation. The contempt that apparently was threatened, never brought to court, but apparently threatened by 350 Encinitas, also arose from post-confirmation conduct. The claim to try the, Mr. Uppel apparently said he was going to raise, but never really did in any context that anyone can see, was that he was going to try to set aside that confirmation order. He would have been barred in doing that. You know, I know this question really doesn't have anything to do with what we have to decide, but it baffles me as to why your client cares whether the settlement agreement is to be approved only by the California court, which would be the result if we said there was no jurisdiction here, or by both courts. I guess I just don't even understand why it matters. It's a valid question, I think, and it may very well be collateral to the legal issue. I'm certain it is, but that's why I prefaced it the way I did. I'm happy to explain, and I believe there's evidence in the record of this, but our client's problem is that their claims weren't being paid, still haven't been. Priority tax claims. My clients are out of pocket, over $100,000, having to pay what were supposed to be priority tax claims because Mr. Estrin hasn't honored those claims. And that $50,000 or more by now would be substantially more that could have been collected from Mr. Uppel, would have gone into the coffers, and would have reimbursed us. But that's a substantive concern is the reasonableness of the settlement, which you could presumably raise wherever, whatever court has jurisdiction to decide whether it's a reasonable settlement. I'm just trying to respond to the question as I understood it. Mr. Vaughn, why do you folks care? That's why we're here. And there's also an issue which arose, which is not in the record, and I fairly recently discovered this. Mr. Well, if it's not in the record, we probably shouldn't pursue it, but thank you. I won't address that. Why do you want to save a little time for rebuttal? I would like to do so, Judge Bragerson, and I appreciate the suggestion, and thank you very much. Are there other questions I can address at this time, Judge Bragerson? Not for now. Thank you very much. Thank you. Good morning again, Your Honors. Scott Keene on behalf of the FLEs. And I want to start off by saying that one of the fundamental elements of confusion I think that has led to this appeal is the confusion that appellants have between an adjudication of a claim and a settlement of a claim. Counsel explained to you that the bankruptcy court sent the substantive claims back to State court, and that's right. There's no quarrel about that. And if those substantive claims were to be adjudicated, then they would have been adjudicated in the State court. They were not adjudicated by any action of the bankruptcy court. Rather, they were settled through a process that the bankruptcy court routinely undertakes to evaluate for the protection of creditors the wisdom of a proposed settlement. So this business about it should have been in the State court is correct as to adjudication, incorrect as to settlement, which is a peculiarly bankruptcy question. When the bankruptcy court, I guess, blesses a settlement, is it saying it's a good faith settlement, it's analogous to the State court kind of blessing? I'm sorry. I didn't hear the last part. Okay. When you ask the bankruptcy court to bless a settlement, is good faith of the settlement a component part of that? Yes, it was. And one of the interesting things that you'll notice in the record, if you look at the settlement, those are not the issues. Nowhere in the brief will you find one sentence that describes why this is a bad settlement, why it was in bad faith, why it didn't meet any of the AC property's factors. That's really not an issue. They're hanging their hat on the jurisdictional question. And I will address just briefly a point that counsel made as to the fact that there was no controversy because we hadn't filed any papers. We didn't reopen the case. We didn't file the contempt. The uphold parties didn't file their motion to vacate the confirmation order. And as I think the court understands, those are the presentation of claims that claims can be settled at a pre-litigation stage. If there's any question as to whether or not that controversy was ripe, in other words, had it been presented to the parties so that it was a controversy, remember, jurisdiction hinges not just on cases, but cases and controversies. And the controversy is clearly set forth in the record. It is at the supplemental excerpts of the record, pages 317 and 318. Those two pages are a letter from counsel for the appellants directed to me. And it does two things. In page 317, clearly explains that they do not agree with the settlement, do not think it's a good deal. On page 318, they raise the issue of Mr. Estrin's authority, clearly stating that he doesn't have any. So the controversy as to whether or not under the plan Mr. Estrin had the authority to enter into this settlement was clearly teed up and ripe controversy. Is the notice of, as you can probably already tell, not a bankruptcy maven, but is the notice of intended action the proper piece of paper, the proper document or method of starting up the bankruptcy court's renewed interest in this matter? Absolutely. Absolutely. And here's why. In the Menke case that we cite in our papers, the bankruptcy appellate court, in a very lengthy opinion, explains why it's not necessary to reopen a case. And one of the most salient parts of its analysis compares the pre-1978 Bankruptcy Act with the post-1978 code. And one of the chief changes that was made, a remedial change from the perspective of the Congress, was to bifurcate cleanly the administrative functions in bankruptcy from the judicial functions. And they point out in the Menke case why purely administrative functions are dealt with under Section 1334A, and all of the judicial functions are reserved under B. They also point out that there's no need to have the bankruptcy case reopened. In fact, routinely, substantive matters are adjudicated after a case is closed without reopening it. And I think the most prominent example of that kind of a situation is in OSC rate contempt. The bankruptcy discharge that is granted to debtors and debtors in possession is a permanent injunction. And frequently, violations of that permanent injunction will occur after the case is closed. There are legions of cases in that area that indicate that there's no necessity to reopen the case. You can consider the contempt. You don't have to reopen the case, because the reopening of the case, you see, reopens all the administrative functions. Is closing a case just an administrative action? I'm sorry? Is closing a case just an administrative action? Yes. It terminates the administration. No longer do you accrue the U.S. trustee fees. No longer is the U.S. Does it get reported back to the the case no longer gets reported back to the AO? I'm not hearing the last part. I'm sorry. The case, I mean, the courts routinely will disclose administratively a case, because it gets reported back to the AO, the administrative office of the U.S. courts, that it's closed and time stops running on that. And when it's at a point generally when one doesn't anticipate necessarily further action. Correct. But it's not the equivalent of dismissal. It is not. As a matter of fact, there are many cases, none of them were relevant here, but there are legions of cases that make that distinction. And probably the most humorous is one where the party tried to reopen a dismissed case, and it was either this court or the bankruptcy appellate panel that said that that was an oxymoron. You can't reopen a case that's never been closed. But clearly there's a distinction. And the distinction, insofar as it applies to this case, is that the judicial powers are reserved. Now let's go to the core of this case, the jurisdictional issue. I agree with one thing that counsel said. He does not – it is not necessary for this Court to announce a new rule to adjudicate this case. The rule has been presented most precisely by the Pegasus Gold case, which is remarkably similar to this case. And in Pegasus Gold case, the circuit adopts the Ramp Resorts International standard, which is where the close nexus issue was really raised. And in doing its analysis, the court in Pegasus – and this was interesting – says it is likely that to resolve the breach of plan claims, the court's going to have to look at the plan. Likely. And that was enough. And then there were other claims that were brought in under supplemental jurisdiction. Compare and contrast that with this case and see how much more the argument favors jurisdiction. Here, because the authority of Mr. Estrin was clearly put at issue by the correspondence I referred to earlier, how is the court going to determine that without looking at the plan? Here it is not likely that the bankruptcy court will have to look at the plan. It is fundamental and indispensable that the court must look at the plan. And that's why the court in its findings in making the tentative ruling, which it incorporated, said, I've looked at the plan, and I've looked specifically and it enumerates the sections. And it's also interesting that this plan was drafted almost two years before the Pegasus Gold case was announced by this case. And if you look at paragraph 10.1i, which is at page 80 of the excerpts of the record, you will see the retention of jurisdiction as if it was crafted based on the Pegasus decision, completely presaging the court's analysis, because it reserves jurisdiction to determine all controversies, suits, and disputes that may arise in connection with, what's the first item? Interpretation of the plan. So the link to jurisdiction post-confirmation that the Pegasus court recognized is the necessity to look at interpretation of the plan. The link that supports the bankruptcy court's exercise of jurisdiction in this case was its need to look at the plan and evaluate the authority of Mr. Esrin to enter into the settlement. It then did its analysis. It states on the record that it considered the AC properties factors. There's no challenge to that anywhere after the order, that she didn't do that. There's a challenge that says, well, there's no formal findings of fact, and that's fatal. I think that's the subtitle of one of the passages in one of Appellant's briefs. It's not fatal at all. And you don't have to look any farther than the AC properties case itself to realize that that is not fatal. If the record has been developed to a condition where it's robust enough that a reviewing court can look at it and see that those factors were applicable, that is enough. And you know that because in AC properties, that is exactly what happened. Are there claims still pending between Epples and Stone? Between Epples? I don't represent Mr. Stone, so I don't know. Okay. None that I'm aware of. All right. Let me see. So the AC properties case stands for the proposition that all that is necessary is a sufficiently developed record for a reviewing court to determine that the bankruptcy court did not abuse its discretion. And I submit to you today that the record was certainly developed to that point. For the simple price of a Rule 12 motion and walking away from a $50,000 claim that would have ignited the forensic equivalent of World War III, this fiduciary was able to get out from under claims in excess of a million dollars. It is a remarkably prudent exercise of discretion, never been challenged. On the jurisdictional basis, applying the Pegasus standard, clearly the court had its jurisdiction. This ruling should be affirmed. Thank you. Thank you. I will be mindful of Judge Pragerson's direction to try to be brief. So I'll hit the points here in the same order that Mr. Keene presented them. I heard my colleague over here say that there's no delineation in any of the briefing why this is a bad settlement. I think it was kind of hard to miss. The reason why it's a bad settlement among so many other factors is because, and this is something that may not have jumped out at the court from the briefing, Uppel bought this business out of bankruptcy. He stood liable for the obligations to 350 Encinitas. Unknown to certainly anybody on our side of the case, Mr. Estrin allowed Mr. Uppel to assign the business over to some outfit called Kaihack Management. That's in the release that was proposed. Unknown to anybody, no bankruptcy court approval sought for that. That's not an issue before us, though. The reasonableness is not an issue, is it? Yes, Your Honor. I did raise it. There are, in the second issue in our brief, the lack of findings, I think, causes this court to. But that's you've raised technical issues here. Did the court have jurisdiction? And if it did, did it make adequate findings for review? That's what I understood you to be asking us to decide. That is the primary issue. But the second heading in the brief does speak. The heading is that the court erred in approving the settlement. Okay. And so substantively, I haven't hit real hard on it, because with the standard of review being what it is, factual determinations and deference being given to the lower courts, I didn't put that issue first. But I wanted to respond to Mr. Keene's comment, that there's no reason why this is a bad settlement. And there's 16 of them. But in deference to Judge Fragerson here, I'll only give you one. And that is that Uppel assigned this business unknown to anybody without bankruptcy court approval to CAHAC. But Uppel was not released. In other words, he still stood liable for the obligations. And are there claims outstanding between Uppel and Stone relating to this business? The State court case, as I understand it, was dismissed without prejudice. There is not active litigation there. With regard to whether that could be reopened, whether there could be a new case filed against us, I'm just holding my breath. There's nothing currently active. But what is active, and this is the point that I was trying to make, and I didn't quite get there, so bear with me for just one second if you could, please. What this release does, what this settlement does, is it absolves Uppel from any responsibility for any debts, anything connected with the plan. And that's the real problem that we have with this release here. And, by the way, CAHAC management, unknown to me until recently, sued Mr. Uppel in State court for fraud over this very deal. That case is pending right now. And part of your problem with it is it does not absolve Stone for anything related to the plan. That does cause me concern, yes. Yes, Your Honor, it certainly does. But when Mr. Keene says that we haven't told the court why this is a bad settlement, that's the number one reason. That's why I have argued in the brief that this is a material plan amendment without going through any of the procedural safeguards that would have to be followed in order to get a material plan amendment. What if CAHAC management stops paying? Mr. Uppel will be resolved. Nobody can go after him if this settlement goes through. And that's the real problem that we have. And did you bring all that before the bankruptcy court? Yes. Yes, I did argue that. I did not bring the fact that CAHAC had sued Uppel because I did not know it at the time. And I think that case perhaps did not do well. Thank you, Mr. President. The next point, and there's only three of them, so I'll try to be as brief as I possibly can. Esperin's authority was questioned. And that seems to be the hook that the district court kind of hung its hat on. And Mr. Keene is also hitting very hard on that, that because I had sent a letter saying we don't think Mr. Esperin has authority to sign on to this settlement and bind 350 Encinitas, that raised all of these issues, and therefore the plan needed to be analyzed in connection with this motion. And that engages Federal jurisdiction. Not so. If the court looks at the notice of intended action, which started this, there is no one. Why don't you give us your third one? Very well. The third one is the A.C. Properties case, and that here there needs to be this appeal invokes some necessity to analyze the plan.  And in the A.C. Properties case, what makes it different than this matter is in the A.C. Properties case, the court actually went through and did the analysis and reviewed the paperwork. If this Court looks on excerpts of record, it's the appellant's excerpts, page 5, we will see that all the bankruptcy judge really did in this matter is to read Mr. Keene's points and authorities. It's specifically referenced in the second paragraph there. This Court did not perform, this Bankruptcy Court did not perform an independent analysis of those essential A.C. Properties factors. And to finish, the issue of Estrin's authority was really collateral here. It was never raised in the notice of intended action, nor does the order ever resolve it. Only that he could come to court and ask it be approved. His authority was neither raised nor resolved. And, Your Honors, I thank you for your time this morning. Thank you very much. A matter of balance of minutes. And we'll pick up the second item on the calendar. Millet v. Experian Information Solutions. Thank you.
judges: Pregerson, Graber, Wardlaw